**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
GREAT LAKES REINSURANCE (UK) PLC,

                    Plaintiff,

          **-**against-

MARIUS FORTELNI,

                    Defendant.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-cv-6278 (ADS)(WDW)

**APPEARANCES:**

**Kelly, Rode, & Kelly**
*Attorneys for the Plaintiff*
330 Old Country Road
Suite 305
Mineola, NY 11501
      By:    John W. Hoefling, Esq., of Counsel

**Goldman & Hellman**
*Attorneys for the Plaintiff*
1330 Beacon Street
Suite 314
Brookline, MA 02446
      By:    Stephen E. Goldman, Esq., of Counsel

**Law Offices Of Richard A. Fogel, P.C.**
*Attorneys for the Defendant*
389 Cedar Avenue
Islip, NY 11751
      By:    Richard A. Fogel, Esq., of Counsel

**SPATT, District Judge.**

On December 21, 2012, the Plaintiff Great Lakes Reinsurance (UK) PLC ("Great Lakes")

commenced this action against the Defendant Marius Fortelni ("Fortelni"), seeking a declaratory

judgment to determine the rights of the parties with regard to a contract of marine insurance.

Presently before the Court is the Plaintiff's motion to dismiss the Defendant's third counterclaim

pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons that

follow, the Plaintiff's motion is granted.

## I. BACKGROUND

### A. Factual Background

Unless otherwise stated, the following facts are drawn from the Defendant's answer, and

are construed in the light most favorable to the Defendant.

On or about August 1, 2012, the Defendant procured a "Commercial Yacht Insuring

Agreement" (the "Agreement") from the Plaintiff. The Agreement provides first-party property

coverage and general liability coverage for the Defendant's boat. The Plaintiff and/or its agents

drafted the Agreement, which covers the period from August 14, 2012 through August 14, 2013.

In pertinent part, the Agreement states:

> [The Plaintiff] provides coverage for accidental physical loss of or damage to the
> Scheduled Vessel which occurs during the period of this insuring agreement and
> within the limits set out in the insuring agreement declarations page, subject to the
> insuring agreement provisions, conditions, warranties, deductibles and exclusions.
>
> 9. General Conditions & Warranties
>
> ******
>
> b)     It is warranted that the scheduled vessel is seaworthy at all times during
> the duration of this insuring agreement. Breach of this warranty will void
> this insuring agreement from its inception.

The Agreement addresses exclusions to coverage as well. In pertinent part, the

Agreement states:

> ### Exclusions to Coverage A
>
> Unless specifically agreed by [the Plaintiff] in writing and additional premium
> charged the following losses and/or damages (whether incurred directly or
> indirectly) are not covered by this insuring agreement:
>
> ******

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

\*\*\*\*\*\*

r)    Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

On or about October 30, 2012, the Defendant's boat, operated by a professionally licensed Captain, sustained extensive damage in the inter-coastal waterway between Palm Beach and Miami, Florida. The boat began taking on water into its engine compartment, stopping the boat's engines. A towing service was able to pump out the flooded engine compartment and tow the boat back to port. The Defendant subsequently notified the Plaintiff of the occurrence. A boatyard later concluded that the seawater entered the compartment from a hose that became disconnected from a water pump. The water pump pumped raw seawater through the hose to cool the engines. Also, the boatyard estimated the damage to the boat was approximately $250,000.

The Defendant subsequently provided the Plaintiff with copies of all documents, including the estimate of damages, and cooperated with the Plaintiff's agent when the agent inspected the vessel. However, the Plaintiff refused to pay for the damage to the vessel. The Plaintiff alleges that its investigation established that the damages sustained by the boat were not accidental. Rather, the Plaintiff contends that the Defendant's vessel was in an unseaworthy condition at the time of the incident due to wear and tear, gradual deterioration, and corrosion. Therefore, the Plaintiff asserts that the Agreement does not cover the damages to the vessel.

On the other hand, however, the Defendant maintains that the Plaintiff breached its contractual obligations pursuant to the Agreement. The Defendant further asserts that there is

ample evidence that the Plaintiff's conduct may warrant a finding of bad faith. See Def's Mem, at 6. First, the Plaintiff's agent, Osprey Special Risks Limited, has a well-publicized history of being involved in bad faith litigation in yacht insurance. According to a website, *www.ospreysucks.com*, the Plaintiff's agent has a history of disclaiming routine yacht insurance claims as an ordinary course of business, which results in above industry average profits for the Plaintiff's agent.

Second, the Defendant asserts that he spent tens of thousands of dollars on maintenance of his vessel in the two-year period prior to the instant incident. All of the maintenance invoices were provided to the Plaintiff's surveyor-investigator, who also interviewed the professional yards that performed the maintenance; inspected the vessel; and interviewed past and present licensed Captains who operated the vessel.

Third, the Plaintiff's surveyor-investigator recommended paying the claim and stated that the Defendant's vessel was well maintained. Also, a third-party boatyard employee told the surveyor-investigator that the employee believed a $2.00 metal hose clamp, a part that is common in boat engine rooms, failed. This clamp, as noted by the surveyor-investigator, was located in an obscure part of the engine room and was difficult to see or locate. As a result, the surveyor-investigator did not see the clamp and no one could locate it.

Fourth, the Defendant alleges that licensed Captains, as a matter of common sense, are unlikely to operate a vessel from New York to Miami if it were not properly maintained and seaworthy, and that hose clamps are routinely checked before long trips. The Defendant also alleges that a poorly maintained vessel is unlikely to be chartered by paying customers. The Defendant further asserts that many clamps located in the vessel's engine room on various hoses were in good condition, even after the occurrence.

4

**B. Procedural History**

On December 21, 2012, the Plaintiff Great Lakes commenced the instant action against the Defendant Fortelni. The Plaintiff seeks a declaratory judgment from this Court pursuant to 28 § U.S.C. 2201 as to the rights of each party to the contract of marine insurance.

Specifically in its first cause of action, the Plaintiff contends that the October 30, 2012 incident does not constitute an accidental physical loss for which coverage would be afforded under the express terms of the Agreement. In its second cause of action, the Plaintiff alleges that the post-incident investigation conducted by the Plaintiff's agent established that the Defendant's vessel was in unseaworthy condition. Therefore, the Plaintiff contends that the Defendant breached his contractual duties and was in direct violation of the express warranty set forth in section 9(b). Consequently, the Plaintiff asserts that the Defendant's breach of warranty renders the Agreement void from the beginning and/or entitles the Plaintiff to declare the agreement void. Moreover, the Plaintiff contends that the Defendant's breach of warranty absolves the Plaintiff from liability for the costs of repairing or replacing the vessel.

The Plaintiff's third cause of action alleges that the October 30, 2012 incident resulted from wear and tear to the vessel. Therefore, the Plaintiff alleges that coverage is excluded under the express terms of subsection b of the Agreement, under Exclusions to Coverage A. Lastly, the Plaintiff's fourth cause of action alleges that the damage to the Defendant's vessel was not caused by an accidental external event such as a collision. As such, the Plaintiff alleges that coverage is excluded under the terms of subsection r under Exclusions to Coverage A in the Agreement.

In sum, the Plaintiff seeks a declaratory judgment from this Court, declaring (1) that the relationship of insurer and insured does not exist between the Plaintiff and the Defendant with

respect to the instant incident; (2) that the Agreement does not afford coverage to the Defendant

for the instant incident; (3) that neither the incident of nor the damage resulting from the instant

incident constitutes an accidental physical loss; and (4) that the Defendant breached the

Agreement's warranty of seaworthiness, and that breach voids the Agreement and relieves the

Plaintiff from liability to the Defendant.

In response, the Defendant denies the allegations raised by the Plaintiff and

asserts three counterclaims. With respect to the first counterclaim, the Defendant seeks a

declaratory judgment stating that the Plaintiff must indemnify the Defendant for the

damages to his boat as a result of the October 30, 2012 incident. Second, the Defendant

asserts that the Plaintiff has breached its obligations under the Agreement and, as a result,

the Defendant has suffered continuing damages.

With respect to the third counterclaim, the Defendant alleges that the Plaintiff's

disclaimer of coverage constituted an act of bad faith pursuant to Ingersoll Milling

Machine Co. v. M/V/ Bodena, 619 F. Supp. 493 (S.D.N.Y. 1985). Accordingly, the

Defendant asserts that he is entitled to attorney's fees for the costs of defending this

lawsuit and raising the counterclaims. On January 24, 2013, the Plaintiff filed the instant

motion pursuant to Rule 12(b)(6) to dismiss the Defendant's third counterclaim for

failure to state a claim.

## II. DISCUSSION

### A. Legal Standard on a Motion to Dismiss

"Under the now well-established Twombly standard, a complaint should be

dismissed only if it does not contain enough allegations of fact to state a claim for relief

that is 'plausible on its face.'" B & A Demolition and Removal, Inc. v. Markel Insurance

Co., 818 F. Supp. 2d 592, 594 (E.D.N.Y. 2011) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). The Second Circuit has

explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two

principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id.

(quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for

relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen

there are well-pleaded factual allegations, a court should assume their veracity and determine

whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true all factual allegations of the

complaint and construes the facts favorably to the plaintiff. See D.S. America (East), Inc. v.

Chromagrafx Imaging Systems, Inc., 873 F. Supp. 786, 791 (E.D.N.Y 1995) (citations omitted).

"These principles apply equally to a defendant's pleading asserting counterclaims." Id. This

Court therefore draws all reasonable inferences in the Defendant's favor.

Further, in considering a motion to dismiss, this Court "must limit itself to facts stated in

the complaint or in documents attached to the complaint [and answer] as exhibits or incorporated

by reference." O'Hearn v. Bodyonics, Ltd. 22 F. Supp. 2d 7, 10 (E.D.N.Y. 1998) (citations

omitted). Moreover, this Court will only grant dismissal if it "appears beyond doubt that the

[defendant] can prove no set of facts which would entitle him or her to relief." <u>Chambers v.</u>

<u>Time Warner, Inc.,</u> 282 F.3d 147, 152 (2d Cir. 2002) (quoting <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83

(2d Cir. 2000)).  The test for dismissal is "not whether a [defendant] will ultimately prevail, but

whether the claimant is entitled to offer evidence to support the claim."  <u>Bodyonics, Ltd</u>. 22 F.

Supp. 2d at 10 (quoting <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995),

<u>cert. denied</u>, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed.2d 14 (1996)).

**B. <u>Has the Defendant Stated a Claim for Attorney's Fees</u>**

   **1. <u>As to Whether Federal or State Law Applies</u>**

      The Defendant's third counterclaim asserts a claim for attorney's fees based on the

Plaintiff's bad faith.  However, as an initial matter, this Court must determine whether federal

admiralty or state law applies with respect to an award of attorney's fees.

      The Supreme Court has held that state law should control with respect to issues of

admiralty law, "*unless* there is an established federal rule."  <u>American Nat. Fire Ins. Co. v.</u>

<u>Kenealy</u>, 72 F.3d 264, 270 (2d Cir. 1995) (citing <u>Wilburn Boat Co. v. Fireman's Fund Ins. Co.,</u>

348 U.S. 310, 321, 75 S. Ct. 368, 374, 99 L. Ed. 337 (1955)) (emphasis added).  In the Second

Circuit, a "general rule" exists that an award of attorney's fees in admiralty actions is

"discretionary with the district judge upon a finding of bad faith."  <u>Ingersoll Mill. Mach. Co. v.</u>

<u>M/V Bodena</u>, 829 F.2d 293, 309 (2d Cir. 1987).  The Second Circuit later revisited its holding in

<u>Ingersoll</u> to clarify that it established a federal admiralty rule "which now must be followed

instead of state law."  <u>American Nat. Fire Ins. Co.,</u> 72 F.3d at 270.  Also, the Second Circuit

noted that its holding was not affected by whether the insurance company brings an action

against the insured, as in the present case.  <u>See</u> <u>Id.</u>

8

The Supreme Court has also recognized this rule as well, as it raised a "reverse-Erie doctrine." Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 223, 106 S. Ct. 2485, 2494 (1986). In other words, "substantive remedies afforded by the States [must] conform to governing federal maritime standards." Id. Following the Supreme Court's decision in Offshore Logistics, other courts have also found that federal law should be applied in admiralty cases. See Southworth Machinery Co., Inc. v. F/V Corey Pride, 994 F.2d 37, 41 (1st Cir. 1993) (holding that state law with respect to attorney's fees was inconsistent with federal law, and so federal law was applied); see also Sosebee v. Rath 893 F.2d 54, 57 (3rd Cir. 1990) ("where a case arises under the federal maritime law . . . a local statute . . . should not be applied").

For the reasons stated above, in the instant case, the Court finds that state law must yield to the established federal admiralty law.

## 2. As to Whether Attorney's Fees May be Awarded Under Federal Admiralty Law

"[T]he general rule is that the award of [attorney's] fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." Ingersoll, 829 F.2d at 308. Accordingly, attorney's fees are unavailable when there has been no claim of bad faith. See Protection Mut. Ins. Co v. Silgan Plastics Corp., No. 96 Civ. 4493, 2000 WL 1277358, at *1 (S.D.N.Y. Sept. 7, 2000). Marine insurers are subject to this rule as well. See Ingersoll, 829 F.2d at 308. However, allegations of bad faith must be dismissed when they are "completely conclusory and are not plausible." Markel American Ins. Co. v. Linhart, No. 11-CV-5094, 2012 WL 2930207, at *2 (E.D.N.Y July 11, 2012).

Courts appear reluctant to award attorney's fees without a clear showing of bad faith. For example, in Federal Ins. Co. v. PGG Realty, LLC, 529 F. Supp. 2d 460, 464 (S.D.N.Y. 2008), the marine mortgagee moved for an award of attorney's fees against the insurer. The Court

found that most of the insurer's reasons for denying coverage were unpersuasive, and even deemed one "absurd." However, the Court noted that the insurer's arguments were not "so entirely without color as to be indicative of bad faith." Id., at 465. Thus, the Court held that an award of attorney's fees was not appropriate, as the insurer's assertions, "though weak, were within the bounds of zealous advocacy." Id.

Similarly, in Ingersoll, the Court found that an award of attorney's fees was not proper. See Ingersoll, 829 F.2d at 310. The Court acknowledged the district judge's "dissatisfaction" with the insurer's refusal to pay the insured's claim. The Court further recognized that the district judge characterized the insurer's explanations as "contrived, concocted solely to keep from paying its obligations under the policy." Id. (emphasis removed and internal quotations removed). Despite the district judge's observation that the insurer "conjured up" its reading of the insurance policy in order to avoid liability, the Court held that the insurer did not act in bad faith in denying the claim. Id. (emphasis removed).

### 3. <u>As to Whether Defendant's Third Counter Claim States a Claim for Attorney's Fees</u>

Here, the Defendant asserts a counterclaim seeking an award of attorney's fees based on bad faith. However, the Defendant fails to state a claim for bad faith. Instead, the Defendant relies on a website that describes the Plaintiff's agent's history of bad faith litigation. See Def's Mem, at 6. But the Defendant fails to cite to any case where a court has considered an insurer's history of bad faith litigation to be indicative of current bad faith in disclaiming coverage. Moreover, although the plaintiff's surveyor-investigator recommended paying the claim, as in PGG Realty, LLC, a mere difference in opinion is not indicative of an insurer's bad faith in denying coverage. The Court finds that the Defendant fails to allege facts that speak directly to

the Plaintiff's conduct with regard to the alleged bad faith.  Accordingly, the Defendant's third

counterclaim cannot survive.

### III. CONCLUSION

For the foregoing reasons, it is hereby

    **ORDERED** that the Plaintiff's motion to dismiss the Defendant's third counterclaim

pursuant to Fed. R. Civ. P. 12(b)(6) is granted and the third counterclaim is dismissed.

    **SO ORDERED.**

    Dated: Central Islip, New York
    June 27, 2013


                         */s/ Arthur D. Spatt*
                         ARTHUR D. SPATT
                         United States District Judge