UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GREAT LAKES REINSURANCE (UK) PLC,

                Plaintiff,

      -against-                  **DECISION AND ORDER**
                                     12-cv-6278 (ADS)(WDW)

MARIUS FORTELNI,

                Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Kelly, Rode, & Kelly**
*Attorneys for the Plaintiff*
330 Old Country Road
Suite 305
Mineola, NY 11501
      By:    John W. Hoefling, Esq., of Counsel

**Goldman & Hellman**
*Attorneys for the Plaintiff*
800 S.E. 3rd Avenue
4th Floor
Fort Lauderdale, FL 33316
      By:    Steven E. Goldman, Esq., of Counsel

**Law Offices Of Richard A. Fogel, P.C.**
*Attorneys for the Defendant*
389 Cedar Avenue
Islip, NY 11751
      By:    Richard A. Fogel, Esq., of Counsel

**SPATT, District Judge.**

       On December 21, 2012, the Plaintiff Great Lakes Reinsurance (UK) PLC ("Great Lakes")

commenced this action against the Defendant Marius Fortelni ("Fortelni"), seeking a declaratory

judgment to determine the rights of the parties with regard to a contract of marine insurance.

Presently before the Court are the parties' respective motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. For the reasons that follow, the Plaintiff's motion is granted and the Defendant's cross-motion is denied.

## I. BACKGROUND

A. <u>Factual Background</u>

Unless otherwise stated, the following facts are drawn from the parties Rule 56.1 statements and exhibits submitted therewith. Triable issues of fact are noted.

On or about August 1, 2012, the Defendant procured a "Commercial Yacht Insuring Agreement" (the "Policy") from the Plaintiff. The Policy provided first-party property coverage and general liability coverage for the Defendant's boat. The Plaintiff and/or its agents drafted the Policy, which covers the period from August 14, 2012 through August 14, 2013. In pertinent part, Coverage A of the Policy stated:

> [The Plaintiff] provides coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

The Policy addressed exclusions to coverage as well. In pertinent part, the Policy stated:

<u>Exclusions to Coverage A</u>

Unless specifically agreed by [the Plaintiff] in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

******

b) Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

******

> r) Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

On or about October 30, 2012, the Defendant's boat, operated by a professionally licensed Captain, sustained extensive damage in the inter-coastal waterway between Palm Beach and Miami, Florida. The boat began taking on water into its engine compartment, stopping the boat's engines. A towing service was able to pump the flooded engine compartment and tow the boat back to port.

The Defendant subsequently notified the Plaintiff of the occurrence. A boatyard later concluded, and it is undisputed, that the seawater entered the compartment from a hose that became disconnected from a water pump. The water pump pumped raw seawater through the hose to cool the engines. The boatyard initially estimated the damage to the boat was approximately $250,000. At the present time, the total damage is likely to be closer to $470,000.

The Defendant subsequently provided the Plaintiff with copies of all documents, including the estimate of damages, and cooperated with the Plaintiff's agent when the agent inspected the vessel. However, the Plaintiff refused to pay for the damage to the vessel. The Plaintiff alleges that its investigation established that the damages sustained by the boat were not "accidental" as "the damage sustained by the vessel resulted from the failure of a stainless steel clamp used to secure a raw water hose connection." (Disclaimer, Exh. F.)

Neither party knows why the particular hose clamp failed. The Plaintiff's surveyor-investigator never observed the hose clamp and, therefore, did not observe if it was corroded. The clamp was lost when the vessel was in the possession of the boatyard, so it could not be examined. The two eyewitnesses who saw the broken clamp both testified that it appeared to have snapped clean through. Eyewitness Captain Paul St. Germain testified that the clamp was

not corroded. St. Germain further testified that the broken clamp looked similar to other clamps on the vessel.

The Plaintiff's representative, B.A. Usher, testified that a defective part such as a clamp may be covered by the Policy but that the insurer would have subrogation rights. Usher further testified that the damage to the vessel by the seawater was unexpected and unintended from the standpoint of the insured. (Usher Dep., at 42.)

The parties agree that seawater does not belong in the engine room and is foreign to the engine compartment. As noted above, the Policy covers damages caused by "ingestion of a foreign object."

However, Usher also testified that the Policy was designed so that insureds do not look to their insurers to fix mechanical problems "just like your auto policy; if your car breaks down, you don't phone your insurance company." (Usher Dep., at 30.).

B. Procedural History

On December 21, 2012, the Plaintiff Great Lakes commenced the instant action seeking a declaratory judgment under 28 § U.S.C. 2201 as to the rights of each party to the Policy.

Of relevance here, the Plaintiff contends that the October 30, 2012 incident does not constitute an "accidental physical loss" for which coverage would be afforded under the express terms of the Policy. The Plaintiff also alleges that the damage to the Defendant's vessel was not caused by an "accidental external event" such as a collision. As such, the Plaintiff alleges that coverage is excluded under the terms of subsection r under Exclusions to Coverage A in the Policy.

In response, the Defendant counterclaimed for a declaratory judgment stating that the Plaintiff must indemnify the Defendant for the damages to his boat as a result of the

October 30, 2012 incident. Second, the Defendant asserted that the Plaintiff breached its obligations under the Policy and, as a result, the Defendant suffered continuing damages. Third, the Defendant alleged that the Plaintiff's disclaimer of coverage constituted an act of bad faith.

On January 24, 2013, the Plaintiff filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Defendant's third counterclaim for failure to state a claim.

On June 27, 2013, the Court granted the Plaintiff's motion to dismiss the Defendant's third counterclaim.

On May 5, 2014, the Plaintiff moved, pursuant to Fed. R. Civ. P. 56, for summary judgment. The Plaintiff emphasizes that, for purposes of its motion for summary judgment, it does not dispute the vessel's seaworthiness or record of maintenance as of the date of the incident. Rather, the Plaintiff argues that it is entitled to summary judgment declaring that the loss or damage to the insured vessel owned by the Defendant was not the result of an "accidental physical loss" under the Policy. Alternatively, to the extent the Defendant seeks to recover for damages related to the vessels' engines, the Plaintiff seeks a partial summary judgment declaration that coverage for any such damage is not warranted because it not caused by an "accidental external event" under the Policy.

On May 23, 2014, the Defendant cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56. Of relevance here, the Defendant contends that, under New York law, an "accident" is an occurrence that results in damage that is unexpected and unintended from the standpoint of the insured.

5

As an initial matter, the Court notes that there are no disputed issues of fact in the parties' Rule 56.1 statements, thereby indicating that this case can be resolved as a matter of law. Indeed, the crux of the dispute is whether an unexplained and unexpected defect to a hose clamp, causing seawater to flood the vessel, qualifies as an "accidental physical loss" within the meaning of the Policy.

## II. DISCUSSION

A. <u>The Legal Standard Under New York Law Governing Interpretation of Insurance Contracts</u>

New York law applies in the first instance. See <u>Wilburn Boat Co. v. Fireman's Fund Insurance Co.</u>, 348 U.S. 310, 321, 75 S. Ct. 368, 374, 99 L. Ed. 337 (1955) (state law is controlling on marine insurance issues).

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." <u>Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.</u>, 472 F.3d 33, 42 (2d Cir. 2006) (citation and internal quotation marks omitted); see also <u>Goldberger v. Paul Revere Life Ins. Co.</u>, 165 F.3d 180, 182 (2d Cir. 1999) ("In New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." (citation and internal quotation marks omitted)). If the terms are unambiguous, courts should enforce the contract as written. See <u>Parks Real Estate</u>, 472 F.3d at 42; <u>Goldberger</u>, 165 F.3d at 182 (quoting <u>Village of Sylvan Beach v. Travelers Indemnity Co.</u>, 55 F.3d 114, 115 (2d Cir. 1995)).

However, if the contract is ambiguous, "particularly the language of an exclusion provision," the ambiguity is interpreted in favor of the insured. See <u>Goldberger</u>, 165 F.3d at 182 (quoting <u>Travelers Indemnity Co.</u>, 55 F.3d at 115). "[I]f the language of the policy

6

is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer." Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co., 13 A.D.3d 599, 600, 788 N.Y.S.2d 142, 144 (2d Dep't 2004) (citation and internal quotation marks omitted). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (citation and internal quotation marks omitted).

B. An "All-Risk" Policy

In the Court's view, the Policy is an "all-risk" policy. See City of Burlington v. Indem. Ins. Co. of N. Am., 332 F.3d 38, 47 (2d Cir. 2003) ("All-risk policies . . . cover all risks except those that are specifically excluded."). As the Defendant-insured is asserting a claim under this "all-risk" Policy, it is the Plaintiff-insurer's burden to show by a preponderance of the evidence that the claim is based on an exclusionary provision, such as the "wear and tear" exclusion.

Stated differently, an all-risk policy places the burden on the insured to establish only the existence of the all-risk policy and its loss. Then the burden shifts to the insurer to show that the coverage of the loss comes within one of the exceptions under the Policy. Pan American World Airways, Inc. v. Aetna Casualty & Surety Co., 505 F.2d 989, 999 (2d Cir. 1974). However, "[a] loss which does not properly fall within the coverage clause cannot be regarded as covered thereby merely because it is not within any of the specific exceptions . . . ." 10 Couch on Insurance 148:48 (3d ed. 1998).

7

The Policy states that the Plaintiff will provide coverage for all "accidental physical loss of or damage" to the Vessel. The Policy does not define the term "accidental." However, the parties' papers reflect an understanding that, in the context of "all-risk" policies, the term "accident" is synonymous with "fortuitous."

The RESTATEMENT OF CONTRACTS, Section 291, comment a (1932), defines a "fortuitous" event as:

> an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, such as the loss of a vessel, provided that the fact is unknown to the parties.

In contrast, "[a] loss is not considered fortuitous if it results from an inherent defect in the object damaged, from ordinary wear and tear, or from the intentional misconduct of the insured. However, loss due to the negligence of the insured or his agents has generally been held to be fortuitous and, absent express exclusion, is covered by an all risks policy." Goodman v. Fireman's Fund Ins. Co., 600 F.2d 1040, 1042 (4th Cir. 1979).

C. Application to this Case

The "loss" in this case is the approximate $470,000 in damage to the Defendant's vessel. The Court finds that this loss was not a fortuitous loss. To hold otherwise would transform this "all-risk" policy into a maintenance contract. As the record makes clear, there was no severe weather nor was there a collision with any fixed or floating object. The Defendant has provided no evidence that any fortuitous event caused, even in part, the damage at issue.

Furthermore, the Defendant has not provided any persuasive case law supporting its theory that a mechanical failure of an unknown cause could, on its own, satisfy the Defendant's burden of proving a fortuitous event. "In other words, [the Defendant has]

8

not provided any case law for the proposition that an insured can satisfy its burden of proving fortuity by showing *nothing* to establish a fortuitous cause of some type of loss." Class Action of South Florida v. National Union Fire Ins. Co., 2013 U.S. Dist. LEXIS 13096, at *17-18 (S.D. Fla. 2013). Indeed, the Defendant concedes that "[n]obody knows why the particular chose clamp failed." (Rule 56.1 Statement of Material Facts, at ¶ 15.)

To be sure, "the law places only a nominal burden . . . upon the insured to prove that a loss occurred and that it was due to some fortuitous event or circumstance, and the insured has no burden to prove the exact cause of the loss." Fed. Ins. Co. v. PGG Realty, LLC, 06 CIV. 2455 (JSR), 2007 WL 1149245, at *8 n. 4 (S.D.N.Y. Apr. 17, 2007)(citations and quotation marks omitted), aff'd sub nom. Fed. Ins. Co. v. Keybank Nat. Ass'n, 340 F. App'x 5 (2d Cir. 2009). Nevertheless, it is a burden "that the Court cannot simply cast aside." Class Action of South Florida, 2013 U.S. Dix. LEXIS 13096, at *18.

In this regard, the Defendant has not presented evidence sufficient to meet the burden of establishing that a fortuitous, accident, or chance event caused the damage to the vessel. Great Lakes Reinsurance (UK) PLC v. Soveral, No. 05–80923–CIV–Ryskamp/Vitunac, No. 05-80923 (KLR), 2007 WL 646981, at *4 (S.D. Fla. Feb. 27, 2007) (granting summary judgment to the insurance carrier concerning an all-risks maritime insurance policy because the insured did not show that his boat sank as a result of an accident, which would have been considered a fortuitous loss).

Fed. Ins. Co. v. PGG Realty, LLC., 538 F. Supp. 2d 680 (S.D.N.Y. 2008) is an instructive case. There, the court conducted a bench trial concerning a capsized vessel.

9

The court found that the vessel capsized, in large part, because of the fortuity of unforeseeable and unpredictable severe weather. The insured prevailed because it provided significant evidence that a fortuitous event — severe weather— was a critical condition in causing the vessel to capsize. Here, even after discovery, the Plaintiff fails to point to any "fortuitous" event for purposes of the all-risk policy.

This is not to say that only severe weather may qualify as a "fortuitous" event. However, where, as here, the Defendant fails to point to any evidence of such an event, the Defendant is foreclosed from recovery as a matter of law.

The fact that Usher testified that the damage caused by a broken clamp would be covered by the Policy is legally irrelevant. There are no material disputed issues of fact and therefore the coverage is an issue of law for the Court to decide, rather than an insured's representative.

In sum, the Court concludes that the Plaintiff is entitled to judgment as a matter of law. Having made this determination, the Court need not address the Plaintiff's alternative argument disputing the Defendant's prayer for damages related to the vessels' engines.

For the foregoing reasons, the Court (1) grants the Plaintiff's motion for summary judgment in all respects and issues a declaration that there is no coverage under the Policy for the damage to the Defendant's vessel in the October 30, 2012 incident; (2) denies the Defendant's cross-motion for summary judgment in all respects; (3) and directs the Clerk of the Court to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
July 21, 2014

                                        *Arthur D. Spatt*
                                        ARTHUR D. SPATT
                                        United States District Judge